**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 20-1046 (and consolidated cases)**
___

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

RFS POWER COALITION,

*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY AND LEE ZELDIN,

*Respondents*.

ON PETITIONS FOR REVIEW OF FINAL AGENCY ACTION
OF THE ENVIRONMENTAL PROTECTION AGENCY

**FINAL BRIEF OF INTERVENORS FOR RESPONDENTS**
**AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS**
**AND SMALL REFINERIES**

Jonathan G. Hardin
Alexandra Magill Bromer
Michael R. Huston
PERKINS COIE LLP
700 Thirteenth Street, NW, Suite 800
Washington, D.C. 20005-3960
(202) 654-6200

*Counsel for Intervenors*
*American Refining Group, Inc.;*
*Calumet Montana Refining, LLC;*
*Calumet Shreveport Refining, LLC;*
*Countrymark Refining & Logistics,*
*LLC; Ergon Refining, Inc.; Ergon-West*
*Virginia, Inc.; Hunt Refining*
*Company; Par Hawaii Refining, LLC;*
*Placid Refining Company LLC; San*
*Joaquin Refining Co., Inc.; The San*
*Antonio Refinery LLC; U.S. Oil &*
*Refining Co.; and Wyoming Refining*
*Company*

Robert J. Meyers
Elizabeth B. Dawson
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(202) 624-2789

Richard S. Moskowitz
Tyler J. Kubik
American Fuel & Petrochemical
Manufacturers
1800 M Street, NW, Suite 900N
Washington, DC 20036

*Counsel for Intervenor American Fuel*
*& Petrochemical Manufacturers*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

### A. Parties, Intervenors, and Amici

All Parties, Intervenors, and Amici are identified in Respondents' brief.

### B. Rulings under review

"Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021 and Other Changes," 85 Fed. Reg. 7016 (Feb. 6, 2020).

### C. Related cases

None.

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule

26.1, Petitioners provide the following disclosures:

- **American Fuel & Petrochemical Manufacturers** is a national trade association whose members comprise most U.S. refining and petrochemical manufacturing capacity. American Fuel & Petrochemical Manufacturers has no parent companies, and no publicly held company has a 10% or greater ownership interest in American Fuel & Petrochemical Manufacturers. American Fuel & Petrochemical Manufacturers is a "trade association" under Circuit Rule 26.1 and operates for the purpose of promoting the general commercial, professional, legislative, or other interests of its members.

- **American Refining Group, Inc.** is a Pennsylvania corporation. It is a refiner of petroleum products, has no parent company, and no publicly held company has a 10 % or greater ownership interest in it.

- **Calumet Montana Refining, LLC** is a Delaware corporation. It is owned 100% by Calumet, Inc., a manufacturer of specialty products and a publicly traded company under the symbol "CLMT." There are no other known parent corporations or publicly held corporations that own 10% or more of Calumet Inc.'s stock.

- **Calumet Shreveport Refining, LLC** is a Delaware corporation. It is owned 100% by Calumet, Inc., a manufacturer of specialty products and a publicly traded company under the symbol "CLMT." There are no other known parent corporations or publicly held corporations that own 10% or more of Calumet Inc.'s stock.

- **Countrymark Refining and Logistics, LLC** (CountryMark) is a cooperative business, owned and controlled by CountryMark member cooperatives, and each member cooperative, in turn, is owned and controlled by farmers, or local agricultural producers. CountryMark is a refiner of petroleum products. No publicly held company has a 10% or greater ownership interest in it.

- **Ergon Refining, Inc.** is a Mississippi corporation. It is a refiner of petroleum products, is wholly owned by parent company Ergon, Inc.,

and no publicly held company has a 10% or greater ownership interest in it.

- **Ergon-West Virginia, Inc.** is a Mississippi corporation. It is a refiner of petroleum products, is wholly owned by parent company Ergon, Inc., and no publicly held company has a 10% or greater ownership interest in it.

- **Hunt Refining Company** is a Delaware corporation. It is a refiner of petroleum products, an indirect wholly owned subsidiary of Hunt Consolidated, Inc., and no publicly held company has a 10% or greater ownership interest in it.

- **Par Hawaii Refining, LLC** is a Delaware limited liability company. It is a refiner of petroleum products and is an indirect wholly owned subsidiary of Par Pacific Holdings, Inc., a publicly traded corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it, or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no other publicly held company has a 10% or greater ownership interest in it.

- **Placid Refining Company LLC** is a Delaware limited liability company. It is a refiner of petroleum products, is owned 100% by its parent companies Placid Holding Company and RR Refining, Inc., and no publicly held company has a 10% or greater ownership interest in it.

- **San Joaquin Refining Co., Inc.** is a privately held company located in California. It is a refiner of petroleum products and has no parent company, is not publicly traded, and no publicly held company has a 10 percent or greater ownership interest in it.

- **The San Antonio Refinery LLC** is a Delaware limited liability company. It is a refiner of petroleum products and is owned 100 percent by Allegiance Refining, LLC. Allegiance Refining, LLC, is a Texas limited liability company. It is a refining operations company and operates The San Antonio Refinery LLC. Allegiance Refining, LLC, is not publicly traded, and no publicly held company has a ten percent or greater ownership interest in it.

- **U.S. Oil & Refining Co.** is a Delaware corporation. It is a refiner of petroleum products and an indirect wholly owned subsidiary of Par

Pacific Holdings, Inc., a publicly held corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it, or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no other publicly held company has a 10% or greater ownership interest in it.

- **Wyoming Refining Company** is a trade name for Hermes Consolidated, LLC, a Delaware limited liability company. It is a refiner of petroleum products and an indirect wholly owned subsidiary of Par Pacific Holdings, Inc., a publicly held corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it, or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no other publicly held company has a 10% or greater ownership interest in it.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ........................................................................................... i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

GLOSSARY ...................................................................................... ix

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

STATUTES AND REGULATIONS ..................................................... 1

STATEMENT OF THE CASE .............................................................. 1

I.     The 2020 Renewable Fuel Standard. ............................................. 1

II.    Procedural History ....................................................................... 2

SUMMARY OF ARGUMENT ............................................................ 3

STANDARDS OF REVIEW ................................................................ 5

ARGUMENT ...................................................................................... 5

I.     Petitioners' Challenge to the 2020 RFS Is Moot and Improperly
     Seeks an Advisory Opinion. ......................................................... 5

II.    EPA Appropriately Maintained Its Policy of Not Increasing
     Renewable Volume Obligations to Compensate for Prior Years'
     Small-Refinery Exemptions. ........................................................ 6

     A.    The statute does not authorize EPA to account for
          renewable volume obligations exempted in one year by
          tacking them on to a future year's applicable volumes ...................... 7

     B.    Reallocating previously exempted volumes to future
          years would violate the Clean Air Act by depriving small
          refineries of previously granted exemptions. .................................. 13

     C.    It was not arbitrary or capricious for EPA not to adopt
          Petitioners' preferred policy. ........................................................ 15

CONCLUSION .................................................................................. 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska v. U.S. Dep't of Agric.*,
  17 F.4th 1224 (D.C. Cir. 2021)................................................................5

*Am. Fuel & Petrochem. Mfrs. v. EPA*,
  937 F.3d 559 (D.C. Cir. 2019)........................................................16, 17

*Am. Fuel & Petrochem. Mfrs. v. EPA*,
  3 F.4th 373 (D.C. Cir. 2021).................................................................9

*Ams. For Clean Energy v. EPA*,
  864 F.3d 691 (D.C. Cir. 2017)............................................................16

*Clean Air Council v. Pruitt*,
  862 F.3d 1 (D.C. Cir. 2017)..................................................................7

*Flast v. Cohen*,
  392 U.S. 83 (1968)................................................................................6

*Gozlon-Peretz v. United States*,
  498 U.S. 395 (1991)............................................................................14

*Growth Energy v. EPA*,
  5 F.4th 1 (D.C. Cir. 2021)...................................................................16

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
  594 U.S. 382 (2021)............................................................................13

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024).........................................................................5, 7

*Pub. Serv. Elec. & Gas Co. v. FERC*,
  783 F.3d 1270 (D.C. Cir. 2015)............................................................6

*Sinclair Wyo. Refin. Co. v. EPA*,
  101 F.4th 871 (D.C. Cir. 2024)....................................3, 6, 9, 15, 16, 17

*Sinclair Wyo. Refin. Co. v. EPA*,
  114 F.4th 693 (D.C. Cir. 2024).....................................................13, 14

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ..............................................................................................18

**Statutes**

42 U.S.C. §7545(*o*)(2) ............................................................................................8

42 U.S.C. §7545(*o*)(2)-(3) .......................................................................................8

42 U.S.C. §7545(*o*)(2)(A)(i) .................................................................................11

42 U.S.C. §7545(*o*)(2)(B)(ii) .................................................................................18

42 U.S.C. §7545(*o*)(2)(B)(ii)(I) .............................................................................10

42 U.S.C. §7545(*o*)(2)(B)(ii)(III) ..........................................................................10

42 U.S.C. §7545(*o*)(2)(B)(ii)-(v) ...........................................................................10

42 U.S.C. §7545(*o*)(3)(B)(i) ..................................................................................13

42 U.S.C. §7545(*o*)(3)(B)(ii) .................................................................................18

42 U.S.C. §7545(*o*)(3)(B)(ii)(II) .............................................................................8

42 U.S.C. §7545(*o*)(3)(C)(ii) ...................................................................................8

42 U.S.C. §7545(*o*)(5)(D) .......................................................................................8

42 U.S.C. §7545(*o*)(7)(A)-(C) ..............................................................................11

42 U.S.C. §7545(*o*)(7)(D) ....................................................................................11

42 U.S.C. §7545(*o*)(7)(F) ..................................................................................8, 11

42 U.S.C. §7545(*o*)(9) ......................................................................................11, 18

42 U.S.C. §7545(*o*)(9)(A)–(B) ..........................................................................13, 14

42 U.S.C. §7545(*o*)(9)(B) .......................................................................................9

42 U.S.C. §7607(b)(1) ..............................................................................................6

Pub. L. No. 109-58, 119 Stat. 594 (Aug. 8, 2005) ................................................9

Pub. L. No. 110-140, 121 Stat. 1492 (Dec. 19, 2007) ...............................................9

**Other Authorities**

75 Fed. Reg. 14670 (Mar. 26, 2010)....................................................................8, 11

84 Fed. Reg. 36762 (July 29, 2019)......................................................................1, 2

84 Fed. Reg. 57677 (Oct. 28, 2019)......................................................................1, 2

85 Fed. Reg. 7016 (Feb. 6, 2020) ..............................................................1, 2, 3, 5, 6

87 Fed. Reg. 39600 (July 1, 2022).........................................................................2, 5

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 186 (2012) ..............................................................................14

# GLOSSARY

| | |
|---|---|
| AFPM | American Fuel & Petrochemical Manufacturers |
| EPA | Environmental Protection Agency |
| EPA Brief | Final Brief for Respondents (April 25, 2025) |
| Initial 2020 Rule | "Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021 and Other Changes," 85 Fed. Reg. 7016 (Feb. 6, 2020). |
| Obligated Parties | Intervenors AFPM and American Refining Group Inc., *et al.* |
| Opening Brief | Final New Opening Brief of Petitioners (April 25, 2025) |
| RFS | Renewable Fuel Standard |
| RINs | Renewable Identification Numbers |
| 2020–2022 Rule | "Renewable Fuel Standard (RFS) Program: RFS Annual Rules," 87 Fed. Reg. 39600 (July 1, 2022) |

Obligated Parties' brief responds to Petitioners Clean Fuels Alliance America and Growth Energy's challenges to the Initial 2020 Rule. For the following reasons, those petitions should be dismissed or denied.

## STATEMENT OF JURISDICTION

This Court lacks jurisdiction over this case because it is constitutionally moot. Argument §I, *infra*; *see also* EPA Brief 2.[1]

## STATEMENT OF THE ISSUES

Obligated Parties adopt EPA's Statement of the Issues. EPA Brief 2.

## STATUTES AND REGULATIONS

The pertinent statute is appended to Petitioners' brief.

## STATEMENT OF THE CASE

In addition to the brief discussion that follows, Obligated Parties adopt EPA's Statement of the Case. EPA Brief 2–10.

## I.    The 2020 Renewable Fuel Standard

In July 2019, EPA proposed the Clean Air Act's RFS requirements for 2020, reflecting its longstanding approach of "calculat[ing] the percentage standards for 2020 without any adjustment for exempted volumes." 84 Fed. Reg. 36762, 36797 (July 29, 2019). EPA reversed course in a supplemental proposal published in October 2019. 84 Fed. Reg. 57677 (Oct. 28, 2019). EPA proposed a new formula

---

[1] And because this case is moot, Obligated Parties do not believe that oral argument is necessary to dispose of it.

accounting for the projected amount of fuel produced by small refineries that might receive exemptions for that compliance year. *Id.* at 57679.

The final rule adopted that new formula. 85 Fed. Reg. 7016, 7050 (Feb. 6, 2020) ("Initial 2020 Rule"). EPA did *not*, however, adjust the formula to account for small-refinery exemptions granted in *prior* years. Indeed, EPA did not propose doing so and expressly declined to seek comment on such an approach. 84 Fed. Reg. at 57679; *see also* 84 Fed. Reg. at 36797 n.165.

## II.    Procedural History

This case is about a now-defunct rule from February 2020 that initially set the amount of renewable fuel to be blended into the nation's transportation fuel and corresponding percentage standards for the 2020 compliance year. 85 Fed. Reg. at 7016. Intervenor AFPM petitioned for review, challenging certain aspects of the Initial 2020 Rule, No. 20-1066, Doc. #1833430 (Mar. 6, 2020), and intervened to defend others, No. 20-1046, Doc. #1832490 (Mar. 9, 2020). Most of the Small Refinery Intervenors challenged the Initial 2020 Rule. No. 20-1106, Doc. #1837478 (Apr. 3, 2020). The Court held all challenges in abeyance after EPA proposed to reconsider and replace the Initial 2020 Rule with new percentage standards. No. 20-1046, Doc. #1929726 (Jan. 7, 2022); Doc. #1940069 (Mar. 22, 2022). In July 2022, EPA did just that, replacing the standards for 2020 and setting the standards for 2021 and 2022. 87 Fed. Reg. 39600 (July 1, 2022) ("2020–2022 Rule").

Petitioners and others challenged the superseding 2020–2022 Rule. *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1210 (and consolidated cases). The Court denied the

petitions for review and upheld the 2020–2022 Rule, including the replacement standards for 2020. *Sinclair Wyo. Refin. Co. v. EPA*, 101 F.4th 871 (D.C. Cir. 2024) ("*Sinclair-Reset*"). Considering that ruling, most of the original petitioners in this case recognized that this Court resolved or mooted their challenges to the Initial 2020 Rule and voluntarily dismissed their petitions.[2] Doc. #2080031 at 2–3 (Oct. 16, 2024).

Petitioners decided to pursue one issue from their Initial 2020 Rule petition, Doc. #2080031 at 4, and the Court set the current briefing schedule, Doc. #2082015 (Oct. 25, 2024). Because Petitioners' only remaining issue concerns small refineries, the Small Refinery Intervenors moved to intervene to protect their interests. Doc. #2083318 (Nov. 1, 2024). The Court granted that motion. Doc. #2094362 (Jan. 15, 2025).

## SUMMARY OF ARGUMENT

The Court should dismiss or deny the remaining petitions for review of the Initial 2020 Rule.

I.     The 2020–2022 Rule superseded the Initial 2020 Rule, rendering any challenge to any of its provisions or "policies" constitutionally and prudentially moot. The Court should decline to issue an advisory opinion regarding EPA's statutory authority under the RFS.

---

[2] Nos. 20-1109 & 20-1111, Doc. #2075240 (Sept. 18, 2024); No. 20-1066, Doc. #2086189 (Nov. 22, 2024) (dismissing Obligated Parties' petitions).

3

II.    EPA correctly declined to adopt a policy espousing upward volume adjustments to account for exempted volumes in prior years.

A.    Nothing in the statutory text allows EPA to convert individual small-refinery volume obligations exempted in one compliance year into requirements for all obligated parties in the next. Congress provided explicit instructions regarding how applicable volumes from one year may impact the next, but did not direct EPA to "ensure" that the sum total of all applicable volumes are eventually introduced into commerce. And contrary to Petitioners' *non sequitur*, nothing about EPA's approach converts an exemption—which applies to one small refinery—into a waiver—which reduces applicable volumes nationwide.

B.    Requiring small refineries exempt from their obligations in one compliance year to shoulder those burdens in the next would convert those exemptions into mere deferments. That approach would violate the Act's express safety valve for small refineries and is thus impermissible.

C.    Even if the text left a gap for EPA to fill, EPA correctly declined to adopt Petitioners' preferred approach, for the reasons EPA explains and because the practical implications would wreak havoc on the annual structure of the RFS.

## STANDARDS OF REVIEW

In addition to the standards of review set forth in EPA's statement, EPA Brief 12, this Court "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

## ARGUMENT

### I.    Petitioners' Challenge to the 2020 RFS Is Moot and Improperly Seeks an Advisory Opinion.

Obligated Parties agree with EPA that Petitioners' challenge is moot and otherwise non-justiciable. EPA Brief 12–23. When EPA issued its 2020–2022 Rule setting new 2020 percentage standards, it necessarily replaced those in the Initial 2020 Rule. Indeed, the 2020–2022 Rule required obligated parties to comply with *different* percentage standards than the Initial 2020 Rule. *Compare* 85 Fed. Reg. 7016 *with* 87 Fed. Reg. 39600. The two rules could not coexist.

It is a "well-settled principle of law" that when an agency has "replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021) (internal quotation marks and citation omitted). By replacing the Initial 2020 Rule's percentage standards with different standards in the 2020–2022 Rule, EPA left nothing behind for Petitioners to challenge. Petitioners' challenge to the Initial 2020 Rule is plainly moot. *Id.* ("Finding a case plainly moot when the agency order has been superseded by a subsequent order is so routine that our court usually would handle such a matter in an unpublished order.") (cleaned up; citation omitted).

Petitioners implicitly acknowledge this by claiming to challenge only EPA's "*policy* of not adjusting RFS standards to account for retroactive exemptions granted for prior years." Opening Brief 27–36 (emphasis added). But Congress gave this Court jurisdiction to review challenges to an agency's "final action," not a "policy" without operative effect. 42 U.S.C. §7607(b)(1). Notably, Petitioners do not seek vacatur of the Initial 2020 Rule, because vacating a superseded rule would have no legal or practical effect. *See* Opening Brief 39.

Granting Petitioners' requested "remand" likewise would have no effect. This Court already upheld EPA's revised 2020 percentage standards in *Sinclair-Reset*, 101 F.4th 871, so remanding the Initial 2020 Rule would not require the agency to do *anything* in connection with the volume of renewable fuel that must be blended in 2020. Instead, Petitioners effectively ask this Court to issue an advisory opinion regarding EPA's statutory authority, hoping to force EPA to increase renewable fuel volumes in *future* years. Of course, federal courts are not in the business of issuing advisory opinions. *Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)).

## II. EPA Appropriately Maintained Its Policy of Not Increasing Renewable Volume Obligations to Compensate for Prior Years' Small-Refinery Exemptions.

The plain text of the statute forecloses Petitioners' argument that EPA may saddle future obligated parties with obligations exempted in prior years *ad infinitum*.

6

Even if the statute was not so clear, it was not arbitrary or capricious for EPA to reject Petitioners' approach.

> ### A. The statute does not authorize EPA to account for renewable volume obligations exempted in one year by tacking them on to a future year's applicable volumes.

This is not the first time this Court has been asked to address Petitioners' arguments regarding a purported duty to "ensure" that each year's full applicable volumes are eventually met. But that single word cannot bear the weight Petitioners would place on it. Despite Petitioners' repeated attempts to invoke this Court's precedents reviewing EPA's actions under the RFS, the Court has never agreed that the "ensure" duty is absolute. EPA thoroughly and persuasively explains that the statute does not require EPA to carry forward exempted obligations from one year to the next, and that EPA correctly declined to do so. EPA Brief 23–36. But the Court can, and should, deny the petitions for a more fundamental reason: the statute does not *allow* EPA to do what Petitioners ask.[3]

1.  "[A]dministrative agencies may act only pursuant to authority delegated to them by Congress." *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (internal quotation marks and citation omitted). The Act contains

---

[3] That EPA did not advance this argument is of no moment, because the Court must independently determine the meaning of the statute. *Loper Bright*, 603 U.S. at 394.

precisely three provisions addressing the relationship between a prior year's

applicable volumes and future years':

> (1) Through 2021, EPA must reduce renewable-fuel requirements based on previous use of renewable fuel by exempt small refineries. 42 U.S.C. §7545(*o*)(3)(B)(ii)(II), (3)(C)(ii); *see* 75 Fed. Reg. 14670, 14717 (Mar. 26, 2010).

> (2) EPA must reduce the statutory volumes if it waives at least 20 percent of a particular volume requirement for two consecutive years, or at least 50 percent of a requirement for one year. 42 U.S.C. §7545(*o*)(7)(F).

> (3) Individual obligated parties may "carry forward a renewable fuel deficit" for a single year. *Id.* §7545(*o*)(5)(D).

Not one of these speaks to *increasing* applicable volumes in subsequent years, and

for good reason. The Act requires renewable-fuel obligations to be set on an "annual

average basis" and applies the obligations to a specific "calendar year." 42 U.S.C.

§7545(*o*)(2)-(3). The statute sets (or requires EPA to set) applicable renewable fuel

volumes for each year, *id.* §7545(*o*)(2), and to the extent those volumes are not met,

the Act does not empower EPA to redistribute them to future years. Thus, contrary

to Petitioners' claim that the statute does not "limit[] the ensure duty temporally,"

Opening Brief 31, the *entire structure* of the RFS program established by Congress

prescribed a clear temporal limitation on the RFS—that applicable volumes are set

8

for each year, individually, and thus so too are EPA's promulgations of each year's obligations.[4]

Had Congress intended EPA to carry forward exempted volumes from one compliance year to the next, surely it would have said so. *See Am. Fuel & Petrochem. Mfrs. v. EPA*, 3 F.4th 373, 381–82 (D.C. Cir. 2021). Congress had ample opportunity when amending the RFS program in 2007, but did not. Pub. L. No. 110-140, 121 Stat. 1492, 1519 (Dec. 19, 2007). Small-refinery exemptions have existed in the RFS, unchanged, since 2005. *Compare* Pub. L. No. 109-58, 119 Stat. 594, 1073 (Aug. 8, 2005) *with* §7545(*o*)(9)(B). Congress was fully aware of their potential impact on applicable volumes, but delegated EPA no authority to do what Petitioners claim.

In asserting that EPA *must* account for all small-refinery exemptions absolutely, Petitioners stretch this Court's decision in *Sinclair-Reset* beyond recognition. Opening Brief 31–32. To be sure, this Court in *Sinclair-Reset* concluded that EPA may "impose a supplemental 2022 volume to make up for volume that should have been satisfied in 2016," when "EPA impermissibly waived 500 million gallons of renewable fuel[.]" 101 F.4th at 894. But this Court did not address the

---

[4] That Congress allowed individual obligated parties to carry forward deficits does not undermine this construct any more than the small-refinery exemptions themselves do—both facilitate obligated parties' ability to comply with the statute, but do not affect EPA's promulgation of the standards.

argument advanced here, and its decision cannot extend EPA authority where it does not exist. When a small-refinery exemption is granted, those exempted volumes are not volumes that "should have been met", *contra* Opening Brief 32—those are compliance obligations of an individual refinery that were *lawfully exempted* according to criteria Congress provided. *See also* EPA Brief 32 (explaining that prior supplemental standards addressed legal errors). While those exempted volumes may reduce the nationwide total of RINs eventually retired to demonstrate compliance, an exemption does not reduce the percentage standard applicable to all other obligated parties.

2.    Other statutory provisions within the RFS reinforce the absence of statutory authority to shift volumetric obligations from one year to the next.

For example, the "set" provision (under which the RFS now operates, 42 U.S.C. §7545(*o*)(2)(B)(ii)-(v)) renders Petitioners' reading of the statute even less plausible. For all RFS compliance years beyond 2022, EPA must set applicable volumes fourteen months in advance of the compliance year, after analyzing multiple criteria including "the impact of the production and use of renewable fuels on the environment," "the impact of renewable fuels on the energy security of the United States" and "the cost to consumers of transportation fuel." *Id.* §7545(*o*)(2)(B)(ii)(I), (II), (V). Crucially, EPA must also assess "the expected annual rate of future commercial production of renewable fuels[.]" *Id.*

§7545(*o*)(2)(B)(ii)(III). Petitioners argue, however, that EPA must not only consider this expected future production, but also past renewable-fuel "shortfalls." Not one of the statutory criteria contemplates such an adjustment; Petitioners cannot legislate where Congress did not.

Additionally, to the extent Petitioners rely on other uses of "ensure" in the statute (which is far from clear, *see* EPA Brief 19 n.5), Petitioners ignore the statutory context. When expanding the RFS program in 2007 to include different types of renewable fuel and new volume requirements, Congress directed EPA to accommodate the broader scope of the RFS by, "[n]ot later than 1 year after December 19, 2007," promulgating "regulations … to ensure that transportation fuel … contains at least the applicable volume of renewable fuel, … determined in accordance with subparagraph (B)[.]" 42 U.S.C. §7545(*o*)(2)(A)(i). Congress thus required EPA to "ensure" it promulgated new RFS framework regulations by a date certain, which EPA belatedly accomplished in 2010. 75 Fed. Reg. 14670 (Mar. 26, 2010). Nowhere did Congress direct EPA to account for other RFS provisions, such as waivers, 42 U.S.C. §7545(*o*)(7)(A)-(C), (D) or (E), or the "reset" provision, *id.* §7545(*o*)(7)(F), much less the temporary and disproportionate economic hardship exemptions, *id.* §7545(*o*)(9). EPA simply has no directive from Congress to make every RFS provision subservient to its duty to "ensure" transportation fuel contains applicable volumes of renewable fuel. Regardless, Petitioners are far too late to

11

challenge these framework regulations and cannot bootstrap them into a challenge to the 2020 RFS.

3.     Finally, EPA is not unlawfully converting small-refinery exemptions into waivers by declining to shift compliance obligations from small refineries exempted from compliance in one year to all obligated parties in a future year. *Contra* Opening Brief 35–36. Obvious textual and practical distinctions between the two reveal why. At the most basic level, a small-refinery exemption applies to one small refinery, excusing that refinery from its annual obligations based on disproportionate economic hardship. That individual small-refinery exemption does not reduce, or "waive," other obligated parties' obligations. Neither does declining to *increase* other obligated parties' obligations to "offset" those exemptions. Nor does a small-refinery exemption reduce the nationwide volume requirements: The percentage standards—the means of compliance Congress designed to achieve the applicable volumes—still apply, unchanged, to all non-exempt obligated parties. By contrast, EPA's waiver authority reduces applicable volumes nationwide, without regard to obligated parties' individual circumstances. *See also* EPA Brief 33. Petitioners' attempt to conflate exemptions and waivers only reveals that it is they who would have EPA create an extra-statutory scheme by requiring never-ending obligation carryforwards.

**B.    Reallocating previously exempted volumes to future years would violate the Clean Air Act by depriving small refineries of previously granted exemptions.**

EPA's statutory authority to issue annual percentage standards comes with the requirement to promulgate regulations that "ensure[] that the requirements of paragraph (2) [of the RFS] are met." 42 U.S.C. §7545(*o*)(3)(B)(i). At the same time, the Clean Air Act requires EPA to exempt a small refinery from "the requirements of paragraph (2)" if complying with those requirements would subject the refinery to "disproportionate economic hardship" for the particular year at issue. *Id.* §7545(*o*)(9)(A)–(B). The annual small-refinery exemption is absolute—"[t]he requirements of paragraph (2) shall not apply[.]" *Id.*

Petitioners' reading (at 28–32) puts the Act at war with itself, insisting that the general duty to ensure that the blending requirements are met somehow trumps the specific "safety valve" Congress created to protect small refineries from the "special burdens" that RFS compliance imposes on them. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386, 397 (2021). Petitioners are wrong.

"The RFS program reflects a carefully crafted legislative bargain to promote renewable fuels, but also to provide an exemption mechanism for small refineries." *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) ("*Sinclair-Exemptions*"). Petitioners' reading assumes that the statute pursues the first at the expense of the second, insisting that any other reading would be "flatly contrary to Congress' intent." Opening Brief 32 (citation omitted). But that is not the balance Congress struck, and Petitioners "cannot rewrite the balance established by

13

Congress." *Sinclair-Exemptions*, 114 F.4th at 711. Even if Petitioners were right that the two provisions are in conflict, the "specific" exemption "provision controls over" the "more general" volumes provision. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 186 (2012) (same).

Petitioners' interpretation contradicts the statute by transforming an exemption into a deferment, thereby depriving small refineries of previously granted exemptions. The same volumes from prior years that Congress said "shall not apply" to exempt small refineries would be *added to future years* and redistributed to all obligated parties, including those previously *exempt* small refineries. By way of example, the RFS requirements for 2017 "shall not apply" to small refineries that received exemptions from EPA based on findings of "disproportionate economic hardship" for the 2017 compliance year. 42 U.S.C. §7545(*o*)(9)(A)–(B). But under Petitioners' view, EPA would be required to *increase* the RFS blending obligation in future years (*e.g.*, 2026–2027) to account for 2017 small-refinery exemptions that EPA granted after it had promulgated the 2017 percentage standards. Opening Brief 28–34. That would deprive small refineries of statutory exemptions they received for 2017 by increasing their 2026–2027 obligations to account for *the very same 2017 volumes* that Congress said "shall not apply" to them.[5]

---

[5] Petitioners may reply that those small refineries could apply for new exemptions for 2026 and 2027, but nothing in the statute requires small refineries to obtain multiple exemptions from the very same volumes.

Once a small refinery has received an annual exemption from EPA for a particular year, the statute is clear—the RFS requirements for that year "shall not apply" to that small refinery. This Court's recent decision in *Sinclair-Reset* does not say otherwise. There, the Court held that "EPA has the authority to adjust the percentage standards to account for small refinery exemptions[.]" *Sinclair-Reset*, 101 F.4th at 893. Importantly, the Court did *not* hold that EPA *must* adjust the volumes to account for those exemptions. *Id.* at 891, 893 (concluding that "EPA's choice" to make those adjustments was reasonable, not required). Moreover, the Court considered only EPA's authority to reallocate exempted volumes *within the same compliance year*, which does not risk re-foisting those volumes onto exempt small refineries. *Id.* at 891–92.

There is nothing in the "ensure" provisions that permits—much less requires—EPA to deprive small refineries of previously granted statutory exemptions.

## C.   It was not arbitrary or capricious for EPA not to adopt Petitioners' preferred policy.

1.     As EPA explains (at 32–36), Petitioners' "ensure" arguments fare no better in the context of arbitrary-and-capricious review. At the outset, because the statute does not provide for shifting obligations from one year to another, Petitioners' request that EPA do so is not an "important issue" that EPA overlooked in discharging its duty to promulgate annual regulations. *Contra* Opening Brief 33. Indeed, this Court repeatedly rejected the notion that EPA must entertain increasing

obligated parties' annual requirements by the amount of exempted obligations in prior years, or by forcing obligated parties to exhaust the RIN bank. *Am. Fuel & Petrochem. Mfrs. v. EPA*, 937 F.3d 559, 589–90 (D.C. Cir. 2019) ("*AFPM*"); *Growth Energy v. EPA*, 5 F.4th 1, 14 (D.C. Cir. 2021); *Ams. For Clean Energy v. EPA*, 864 F.3d 691, 715 n.3 (D.C. Cir. 2017) ("*ACE*"). Nothing is different now; the statute does not support Petitioners' quest to increase the quantity of their products in the marketplace "at all costs." *ACE*, 864 F.3d at 714. Petitioners attempt to circumvent that case law but have no other example of EPA actually adjusting future years' standards where prior years fall short. *See* EPA Brief 28.

For example, just as the statute "clearly does not mandate the inclusion of carryover cellulosic RINs in calculating the 'projected volume available,'" *Sinclair-Reset*, 101 F.4th at 883, so too does it not mandate the rolling forward of exempted obligations. In practice, this means that "EPA cannot ensure that non-exempt obligated parties compensate for the renewable-fuel shortfall created by belated exemptions," and so "those gallons of renewable fuel simply go unproduced." *AFPM*, 937 F.3d at 571. Far from being a flaw in EPA's implementation, it is a feature of the system Congress created. *See id.* As this Court explained, after EPA determines what volume requirements apply for various categories of renewable fuel, "EPA *fulfills that mandate* [to "ensure" the statute's requirements are met] by translating the annual volume requirements into 'percentage standards.'" *ACE*, 864

F.3d at 699 (emphasis added).

Similarly, Petitioners' attempt to leverage this Court's decision upholding EPA's revised formula reallocating in-year exemptions misses the mark. In *Sinclair-Reset*, this Court explained that EPA's revised formula, which increases percentage standards for a given compliance year to account for exemptions it anticipates will be granted for *that compliance year*, "helps prevent *undercompliance*[.]" 101 F.4th at 891. Setting aside whether small-refinery exemptions create an "undercompliance" problem for that compliance year (they do not), increasing a *subsequent* compliance year's obligation for a prior year's exemptions plainly cannot address "undercompliance" because of the annual nature of the obligations. *See AFPM*, 937 F.3d at 571–72. Further, any inability of the transportation fuel market to achieve the precise amount of renewable fuel used to calculate the percentage standards does not render obligated parties in a state of "undercompliance"—rather, it is a function of the amount of nonrenewable fuel consumed in a given year. Because compliance occurs by demonstrating achievement of the *percentage* standard, not a *volumetric* standard, obligated parties do not "under-comply" with their obligations simply because they do not sell a particular amount of transportation fuel.

2.     To the extent the Court allows Petitioners to challenge EPA's approach as a free-floating policy divorced from the 2020 compliance year (which, as explained

Argument §I, *supra*, it should not), Petitioners overlook the practical implications of their request that EPA create an additional 4.73 billion gallons of demand for their products. Opening Brief 3, 9, 12, 15, 25. Petitioners argue that the word "ensure" requires EPA to look back a dozen years to 2013 and transform small-refinery exemptions authorized in §7545(*o*)(9) into new volume requirements to be imposed under §7545(*o*)(3)(B)(ii). Given that the 2025 RFS compliance year is already well underway, the earliest new volumes that could apply would be in 2027. Petitioners suggest that "EPA can … spread[] out the … volume across multiple compliance years … as it did when making up the unlawful 2016 waiver." Opening Brief 34, n.3. Petitioners' suggestion (a supplemental 250 million gallons per year) would mean exempted volumes from 2013 would apply to obligated parties until the mid-2040s. Such a result contravenes Congress' direction to EPA to implement the post-2022 RFS, based on an assessment of multiple criteria, resulting in forward-looking, annual standards. 42 U.S.C. §7545(*o*)(2)(B)(ii). While the word "ensure" implies a degree of EPA diligence in faithfully setting these standards, Congress did not grant EPA expansive authority to restructure a program focused on prospective calendar year requirements into one where requirements in prior years may be implemented over decades. Congress "does not … hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (citation omitted).

## CONCLUSION

The Court should dismiss or deny the Petitions.

April 25, 2025                                   Respectfully Submitted,

                                                /s/ Robert J. Meyers

Jonathan G. Hardin                              Robert J. Meyers
Alexandra Magill Bromer                         Elizabeth B. Dawson
Michael R. Huston                               CROWELL & MORING LLP
PERKINS COIE LLP                                1001 Pennsylvania Avenue, NW
700 Thirteenth Street, NW, Suite 800            Washington, DC 20004-2595
Washington, D.C. 20005-3960                     (202) 624-2789
(202) 654-6200
                                                Richard S. Moskowitz
                                                Tyler J. Kubik
*Counsel for Intervenors*                       American Fuel & Petrochemical
*American Refining Group, Inc.;*                Manufacturers
*Calumet Montana Refining, LLC;*                1800 M Street, NW, Suite 900N
*Calumet Shreveport Refining, LLC;*             Washington, DC 20036
*Countrymark Refining & Logistics,*
*LLC; Ergon Refining, Inc.; Ergon-West*         *Counsel for Intervenor American Fuel*
*Virginia, Inc.; Hunt Refining*                 *& Petrochemical Manufacturers*
*Company; Par Hawaii Refining, LLC;*
*Placid Refining Company LLC; San*
*Joaquin Refining Co., Inc.; The San*
*Antonio Refinery LLC; U.S. Oil &*
*Refining Co.; and Wyoming Refining*
*Company*

19

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's briefing order because this brief contains 4,174 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: April 25, 2025                    */s/ Robert J. Meyers*
                                         Robert J. Meyers

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I caused the foregoing to be filed through the Court's CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

*/s/ Robert J. Meyers*
Robert J. Meyers