NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 20-1046 (and consolidated cases)

───────────────

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

───────────────

RFS POWER COALITION
*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Respondents*.

───────────────

Petition for Review of Action of the
U.S. Environmental Protection Agency

───────────────

**FINAL BRIEF FOR RESPONDENTS**

───────────────

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

Of Counsel:

LUCAS MAY
U.S. Environmental Protection
 Agency

TSUKI HOSHIJIMA
KIMERE J. KIMBALL
U.S. Department of Justice
Environment and Natural Resources
 Division
P.O. Box 7611
Washington, D.C. 20044
(202) 532-3285
tsuki.hoshijima@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.    Parties and Amici

#### A.    Petitioners

No. 20-1046: RFS Power Coalition*

No. 20-1107: Clean Fuels Alliance America

No. 20-1113: Growth Energy

#### B.    Respondents

U.S. Environmental Protection Agency; Lee Zeldin,† in his official capacity as Administrator, U.S. Environmental Protection Agency.

#### C.    Intervenors

American Fuel & Petrochemical Manufacturers; American Refining Group, Inc.; Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Hawaii Refining, LLC; Placid Refining Company LLP; San Joaquin Refining Co., Inc.; U.S. Oil &

---

* RFS Power Coalition has not dismissed its petition, but it never filed an opening brief under the original briefing schedule and has not filed one now. *See* Original EPA Br. 1 n.1 (Dec. 8, 2021), ECF#1925941 (noting absence).

† Substituted as Respondent per Federal Rule of Appellate Procedure 43(c)(2).

Refining Company; Wyoming Refining Company; The San Antonio

Refinery LLC; and Countrymark Refining and Logistics, LLC.

## II.    Rulings Under Review

The agency action under review is EPA's rule titled "Renewable

Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel

Volume for 2021 and Other Changes," 85 Fed. Reg. 7016 (Feb. 6, 2020).

## III.    Related Cases

Other EPA rules establishing volumes and percentage standards

under the Renewable Fuel Standard program have been challenged in

petitions for review filed in the D.C. Circuit. The Court recently decided

*Sinclair Wyoming Refining Co. LLC v. EPA*, 101 F.4th 871 (D.C. Cir.

2024). The Court heard oral argument in November 2024 in *Center for*

*Biological Diversity v. EPA*, No. 23-1177 (D.C. Cir.).

/s/ *Tsuki Hoshijima*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND
    RELATED CASES ................................................................... i

TABLE OF AUTHORITIES ..................................................... iv

GLOSSARY ............................................................................ ix

INTRODUCTION ..................................................................... 1

STATEMENT OF JURISDICTION ........................................... 2

STATEMENT OF THE ISSUES ................................................ 2

PERTINENT STATUTES AND REGULATIONS ...................... 2

STATEMENT OF THE CASE .................................................... 2

    A.   RFS Program ............................................................ 2

    B.   2020 Rule .................................................................. 4

    C.   Events since the 2020 Rule ....................................... 7

SUMMARY OF ARGUMENT .................................................. 10

STANDARD OF REVIEW ....................................................... 12

ARGUMENT .......................................................................... 12

I.    Petitioners' challenge should not be considered ........... 12

    A.   The challenge is moot. .............................................. 12

    B.   The challenge is otherwise inappropriate for
        judicial resolution .................................................... 17

II.   The statute does not require EPA to set standards that
    account for exemptions from prior years. ..................... 23

CONCLUSION ....................................................................... 36

# TABLE OF AUTHORITIES

## Cases

*Alon Refin. Krotz Springs, Inc. v. EPA*,
    936 F.3d 628 (D.C. Cir. 2019) ............................................................ 23

*Am. Fuel & Petrochemical Mfrs. v. EPA*,
    937 F.3d 559 (D.C. Cir. 2019) .............................................................. 5

*Ams. for Clean Energy v. EPA*,
    864 F.3d 691 (D.C. Cir. 2017) ................................................ 28, 31, 35

*Am. Mar. Ass'n v. United States*
    766 F.2d 545 (D.C. Cir. 1985) ............................................................ 16

*Arellano v. McDonough*,
    598 U.S. 1 (2023) ................................................................................ 20

*Chamber of Com. v. DOE*,
    627 F.2d 289 (D.C. Cir. 1980) ............................................................ 17

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ................................................................................ 14

*Dubin v. United States*,
    599 U.S. 110 (2023) ............................................................................ 27

*Garden State Broad. Ltd. P'ship v. FCC*,
    996 F.2d 386 (D.C. Cir. 1993) ............................................................ 15

*Growth Energy v. EPA*,
    5 F.4th 1 (D.C. Cir. 2021) ..................................................................... 6

*Gull Airborne Instruments, Inc. v. Weinberger*,
    694 F.2d 838 (D.C. Cir. 1982) ............................................................ 21

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
   583 U.S. 17 (2017) ................................................................ 20

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) .............................................................. 25

*MBIA Ins. Corp. v. FDIC*,
   708 F.3d 234 (D.C. Cir. 2013) ............................................. 17

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
   598 U.S. 288 (2023) .............................................................. 14

*Monroe Energy, LLC v. EPA*,
   750 F.3d 909 (D.C. Cir. 2014) ....................................... 28, 31

*Motor & Equip. Mfrs. Ass'n v. Nichols*
   142 F.3d 449 (D.C. Cir. 1998) ....................................... 16, 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................... 12

*Penthouse Int'l, Ltd. v. Meese*,
   939 F.2d 1011 (D.C. Cir. 1991) ..................................... 17, 18

*Polselli v. IRS*,
   598 U.S. 432 (2023) .............................................................. 24

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) .............................................................. 18

*Sinclair Wyo. Refin. Co. LLC v. EPA*,
   101 F.4th 871 (D.C. Cir. 2024) ............................ ii, 3, 9, 22, 25, 26, 27,
   ................................................................28, 30, 31, 32, 34, 35

*Sinclair Wyo. Refin. Co. LLC v. EPA*,
   114 F.4th 693 (D.C. Cir. 2024) ........................................... 30

*Union of Concerned Scientists v. NRC*
  711 F.2d 370 (D.C. Cir. 1983) ................................................................. 15

*Wayman v. Southard,*
  23 U.S. (10 Wheat.) 1 (1825) ................................................................. 25

**Statutes**

42 U.S.C. § 7545(*o*)(2) ..................................................................... 3, 28

42 U.S.C. § 7545(*o*)(2)(A)(i) ............................................................. 19

42 U.S.C. § 7545(*o*)(2)(A)(iii)(I) ..................................................... 19

42 U.S.C. § 7545(*o*)(2)(B)(i) ............................................................. 3

42 U.S.C. § 7545(*o*)(2)(B)(ii) ........................................................... 3

42 U.S.C. § 7545(*o*)(3)(B) ................................................................ 24

42 U.S.C. § 7545(*o*)(3)(B)(i)-(ii) ...................................................... 24

42 U.S.C. § 7545(*o*)(3)(B)(i) ....................................... 3, 5, 6, 12, 19, 25, 26

42 U.S.C. § 7545(*o*)(3)(B)(ii) ........................................................ 3, 4, 5

42 U.S.C. § 7545(*o*)(3)(C)(ii) .......................................................... 24

42 U.S.C. § 7545(*o*)(5) ..................................................................... 4

42 U.S.C. § 7545(*o*)(6)(B) ................................................................ 19

42 U.S.C. § 7545(*o*)(7) ................................................................ 3, 33

42 U.S.C. § 7545(*o*)(7)(A) ............................................................... 29

42 U.S.C. § 7545(*o*)(7)(D)(i) ........................................................... 29

42 U.S.C. § 7545(*o*)(7)(E)(ii) ............................................................... 29

42 U.S.C. § 7545(*o*)(7)(F) ..................................................................... 34

42 U.S.C. § 7545(*o*)(9)(B)(i) .......................................................... 4, 5, 24

42 U.S.C. § 7607(d)(1)(E) ..................................................................... 12

42 U.S.C. § 7607(d)(7)(A) ................................................................ 12, 18

42 U.S.C. § 7607(d)(9) ................................................................ 12, 14, 18

**Regulations**

40 C.F.R. § 80.2 ............................................................................... 3, 4

40 C.F.R. § 80.1405(c) ........................................................................... 5

40 C.F.R. § 80.1407(a) ........................................................................... 4

40 C.F.R. § 80.1426 .............................................................................. 4

40 C.F.R. § 80.1427(a) ........................................................................... 4

40 C.F.R. § 80.1427(a)(5) ....................................................................... 4

40 C.F.R. § 80.1428(c) ........................................................................... 4

**Federal Register**

49 Fed. Reg. 2897 (Jan. 24, 1984) ......................................................... 16

49 Fed. Reg. 39847 (Oct. 11, 1984) ....................................................... 16

77 Fed. Reg. 1320 (Jan. 9, 2012) ........................................................... 26

85 Fed. Reg. 7016 (Feb. 6, 2020) .......................................... ii, 1, 4, 5, 6, 26

86 Fed. Reg. 72436 (Dec. 21, 2021) ..................................................7, 13, 35

87 Fed. Reg. 39600 (July 1, 2022) .................................8, 13, 14, 31, 34, 35

88 Fed. Reg. 44468 (July 12, 2023) ...............................................10, 19, 31

## GLOSSARY

| | |
|---|---|
| EPA | Environmental Protection Agency |
| RFS | Renewable Fuel Standard |
| RIN | Renewable identification number |

# INTRODUCTION

Much has happened since EPA issued the rule under challenge. 85 Fed. Reg. 7016 (Feb. 6, 2020) ("2020 Rule"). Nearly all petitioners have voluntarily dismissed their petitions, acknowledging that the 2020 Rule has been overtaken by later events. Just two persist.

The last remaining Petitioners[1] challenge an EPA "policy" from the 2020 Rule that, when setting standards under the Clean Air Act's Renewable Fuel Standard program, EPA would not account for certain small refinery exemptions from past compliance years. But there is no longer a live controversy because EPA considered that issue anew and provided more explanation in a later rule. That later rule will remain in place no matter what remedy the Court grants in this case, making Petitioners' challenge moot. In the alternative, the Court should not reach the merits because Petitioners' challenge is inappropriate for judicial resolution for various prudential and equitable reasons. If the Court were nonetheless to reach the merits, then Petitioners' challenge

---

[1] Growth Energy and Clean Fuels Alliance America. The latter was known as National Biodiesel Board at the time of the original opening briefs in this case. *See* Notice of Name Change (Jan. 20, 2022), ECF#1931589.

should be rejected because nothing in the statute requires EPA to set standards that reach back years into the past to account for prior-year exemptions.

## STATEMENT OF JURISDICTION

This Court lacks jurisdiction because the case is moot. *Infra* Argument Section I.A.

## STATEMENT OF THE ISSUES

1.    Whether Petitioners' challenge should not be heard because it is moot, or otherwise inappropriate for judicial resolution, following EPA's reconsideration of the challenged rule and other later events.

2.    Whether the statute requires EPA to establish percentage standards under the Renewable Fuel Standard program that account for certain small refinery exemptions that were granted for prior compliance years.

## PERTINENT STATUTES AND REGULATIONS

The relevant statute is in the addendum to Petitioners' brief.

## STATEMENT OF THE CASE

### A.    RFS Program

The Court has described the Clean Air Act's Renewable Fuel Standard program in previous opinions addressing RFS annual

standards. *See Sinclair Wyo. Refin. Co. LLC v. EPA*, 101 F.4th 871, 876-79 & n.1 (D.C. Cir. 2024).

The statute requires certain volumes of renewable fuels to be introduced into the country's supply of transportation fuel each year. 42 U.S.C. § 7545(*o*)(2). For the initial years of the program, the statute set out the target renewable-fuel volumes, subject to modification under EPA's authority to waive or reset the volumes in certain prescribed circumstances. *Id.* § 7545(*o*)(2)(B)(i), (7). Starting with the 2023 compliance year, EPA sets all target volumes based on listed statutory factors. *Id.* § 7545(*o*)(2)(B)(ii).

Through 2021, EPA had to annually establish a "renewable fuel obligation" for the following year to "ensure[]" that the target volumes were met. *Id.* § 7545(*o*)(3)(B)(i). The renewable fuel obligation is expressed as a set of percentage standards. *Id.* § 7545(*o*)(3)(B)(ii). EPA had to calculate the standards for each compliance year by November 30 of the prior year. *Id.* § 7545(*o*)(3)(B)(i).

Each obligated party (generally, refiners and importers of transportation fuel) uses the percentage standards to determine its individual RFS obligation. *Id.* § 7545(*o*)(3)(B)(ii); 40 C.F.R. § 80.2. An

obligated party calculates its individual obligation by multiplying each percentage standard by the volume of its production or importation of gasoline and diesel that year. 42 U.S.C. § 7545(*o*)(3)(B)(ii); 40 C.F.R. § 80.1407(a). Each obligated party complies with its individual obligation by obtaining and "retiring" compliance credits. 40 C.F.R. § 80.1427(a). Those credits, known as renewable identification numbers, or RINs, represent volumes of renewable fuels. 42 U.S.C. § 7545(*o*)(5); 40 C.F.R. §§ 80.2, 80.1426. Unused RINs may be sold or carried over to satisfy part of the next year's compliance obligation. 42 U.S.C. § 7545(*o*)(5); 40 C.F.R. §§ 80.1427(a)(5), 80.1428(c).

The statute allows small refineries to petition "at any time" for exemptions from their RFS obligations due to "disproportionate economic hardship." 42 U.S.C. § 7545(*o*)(9)(B)(i).

### B.     2020 Rule

The 2020 Rule revised the formula that EPA uses to calculate the annual percentage standards that determine the individual RFS obligation for each obligated party. It also applied the revised formula to calculate the 2020 standards. 85 Fed. Reg. at 7017.

4

The basic approach of the formula is to divide the target renewable-fuel volumes by that year's projected national volume of gasoline and diesel use, with certain reductions to the denominator to account for small refinery exemptions. 40 C.F.R. § 80.1405(c). A greater reduction in the denominator increases the percentage standards for non-exempt obligated parties. *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 587-88 (D.C. Cir. 2019). The 2020 Rule's revision to the formula pertained to how EPA makes that denominator reduction.

Until the 2020 Rule, EPA reduced the denominator based only on exemptions that it had granted by the time it calculated the standards. 85 Fed. Reg. at 7049. But EPA has often granted exemptions after it calculates the standards. That is because the statute directed EPA to calculate the standards before the start of each compliance year while also allowing small refineries to petition for exemptions "at any time." 42 U.S.C. § 7545(*o*)(3)(B)(i), (9)(B)(i).[2] Prior to the 2020 Rule, EPA did

---

[2] Petitioners refer to exemptions granted after EPA's calculation of the standards as "retroactive," as if to suggest that they are improper, but that is misleading. The statute plainly allows small refineries to petition for an exemption even after EPA has established standards. With this caveat, we use the term "retroactive" exemptions to avoid introducing competing nomenclature.

not account for so-called "retroactive" exemptions when calculating the standards. 85 Fed. Reg. at 7049 & n.147; *Growth Energy v. EPA*, 5 F.4th 1, 12 (D.C. Cir. 2021).

In the 2020 Rule, EPA revised its approach based on its evolving experience in implementing the RFS program. EPA changed the formula to reduce the denominator based not only on exemptions that EPA had granted by that time, but also on the volume of gasoline and diesel that EPA projected would be exempt for that compliance year. 85 Fed. Reg. at 7049-50. EPA declined to further revise the formula to "account for [exemptions] granted in past years." 2020 Response to Comments, EPA-HQ-OAR-2019-0136-2157, at 172, JA080.

To illustrate with an example, take the 2020 compliance year. The statute required EPA to set the 2020 standards by November 30, 2019. 42 U.S.C. § 7545(*o*)(3)(B)(i). Under the prior approach, EPA would have set 2020 standards that accounted only for any 2020 exemptions granted by that time. Under the 2020 Rule's revised approach, EPA set 2020 standards that accounted for any 2020 exemptions granted by that time, as well as the volume of gasoline and diesel that EPA projected would be exempt for the 2020 compliance year. But EPA did not set

2020 standards to also account for all prior exemptions that EPA granted after setting the standards for compliance years 2019, 2018, 2017, and so on.

## C.     Events since the 2020 Rule

This case began in early 2020, when the Court consolidated twelve petitions challenging the 2020 Rule. The procedural history since then is lengthy and complex, involving a series of abeyances due to various RFS-related developments—most notably, EPA's issuance and this Court's review of a rule that reconsidered the 2020 Rule. We recount the most relevant history.

In early 2021, Petitioners filed their opening brief challenging the 2020 Rule. Original Biofuels Br. (Jan. 29, 2021), ECF#1882940. In Section I of that brief, they argued that the 2020 standards were too low because the standards failed to account for "retroactive" exemptions granted in prior years. *Id.* at 13-26.

In late 2021, EPA published a proposal to reconsider the 2020 Rule. 86 Fed. Reg. 72436, 72437 (Dec. 21, 2021). EPA expressly solicited comments on the 2020 Rule's revisions to the percentage-standard formula to account for projected exemptions. *Id.* at 72463.

7

Because EPA was reconsidering the 2020 Rule's revisions to the formula, EPA's original response brief did not address the merits of Petitioners' argument. Instead, EPA sought voluntary remand on that issue. Original EPA Br. 27-38 (Dec. 8, 2021), ECF#1925941. Rather than remanding the 2020 Rule, the Court put this case into abeyance. Order (Feb. 8, 2022), ECF#1934323.

In 2022, EPA completed its reconsideration of the 2020 Rule in a final rule that also established the 2021 and 2022 standards. 87 Fed. Reg. 39600 (July 1, 2022) ("2020-2022 Rule"). EPA "reaffirm[ed]," *id.* at 39631, the 2020 Rule's revision of the formula to account for projected exemptions. EPA explained that its rationale for the revised formula "largely overlaps with the rationales we previously presented, but also differs in some respects." *Id.* at 39632. EPA also explained why it was not accounting for "retroactive" exemptions from prior years. 2020-2022 Response to Comments, EPA-HQ-OAR-2021-0324-0765, at 137-41, JA113-17.[3] EPA recalculated the 2020 standards, applying the reaffirmed formula but using updated data. 87 Fed. Reg. at 39634-35.

---

[3] This comment response is part of the 2020-2022 Rule record but postdates the record for the 2020 Rule.

EPA moved to keep this case in abeyance pending judicial review of the 2020-2022 Rule and certain other RFS-related actions because resolution of those cases could moot this case. Mot. 5 (Sept. 29, 2022), ECF#1966767. Petitioners did not oppose. *Id.* at 7. The Court granted the motion. Order (Oct. 7, 2022), ECF#1968062.

Last summer, this Court issued a decision rejecting all challenges to the 2020-2022 Rule. *Sinclair*, 101 F.4th 871. The Court upheld EPA's revision of the percentage-standard formula against claims by obligated parties that EPA was not permitted to account for projected exemptions. *Id.* at 890-93. The Court did not address any argument that EPA had to account for "retroactive" exemptions from prior years, since no party made that argument. *See id.* Petitioners here (Growth Energy and Clean Fuels) had the opportunity to make that argument, but they chose not to do so. In fact, they chose not to challenge any aspect of the 2020-2022 Rule. Instead, they intervened to defend that rule. *See* Biofuels Respondent-Intervenors Final Br., *Sinclair*, No. 22-1210 (Sept. 19, 2023), ECF#2017770 ("*Sinclair* Intervenor Br."); Order, *Sinclair*, No. 22-1210 (Nov. 29, 2022), ECF#1975422 (granting intervention).

Meanwhile, EPA continued to administer the RFS program by issuing standards for 2023 to 2025. 88 Fed. Reg. 44468 (July 12, 2023) ("2023-2025 Rule"). The 2023-2025 Rule is under review in *Center for Biological Diversity v. EPA*, No. 23-1177 (D.C. Cir.) (oral argument held Nov. 1, 2024). Petitioners here again intervened to defend that rule. Biofuels Respondent-Intervenors Final Br., *Ctr. for Biological Diversity*, No. 23-1177 (Sept. 6, 2024), ECF#2073497.

Even after all these developments, Petitioners claim that one of their challenges to the 2020 Rule remains live. The Court thus reestablished a briefing schedule in this case. Order (Oct. 25, 2024), ECF#2082015.

## SUMMARY OF ARGUMENT

**I.A.**  Petitioners concede that they no longer have a live claim that the 2020 standards in the 2020 Rule were too low because of EPA's failure to account for past "retroactive" exemptions. As they must—the 2020-2022 Rule recalculated the 2020 standards based on new information, so the standards in the 2020 Rule have no more effect.

So instead, they have reformulated their challenge to attack EPA's "policy" of not accounting for past "retroactive" exemptions. That

challenge, too, is moot. EPA reconsidered the 2020 Rule in the 2020-2022 Rule, and there is no longer any effectual relief that the Court could grant related to the 2020 Rule. The 2020-2022 Rule—including the revised 2020 standards—will remain in place no matter what remedy the Court grants here.

**I.B.**   Even if the Court were to find that this case is not constitutionally moot, this case is inappropriate for judicial resolution for various prudential and equitable reasons. This case is prudentially moot because EPA provided more explanation in a later administrative record that is not under review here. The record that is under review here is stale. Petitioners' arguments are also barred by waiver, forfeiture, or laches because they knowingly chose not to raise those arguments in the 2020-2022 Rule litigation and because they have changed their arguments since their original opening brief in this case.

**II.**   Their arguments lack merit anyway. The statute imposes no requirement that EPA adjust standards to make up for past "retroactive" exemptions. Petitioners attempt to locate such a requirement in the statutory provision that directed EPA to set a "renewable fuel obligation that ensures that" the target volume is met.

42 U.S.C. § 7545(*o*)(3)(B)(i). But when read in context of the forward-looking and predictive standard-setting process, "ensure[]" requires only that EPA set percentage standards that are reasonably designed to meet the target volumes for that year. It does not require that EPA make up for past-year volumes that prior standards did not end up achieving.

## STANDARD OF REVIEW

The Court "may reverse" EPA's action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(1)(E), (d)(9). Under that standard, the Court must uphold EPA's action where EPA has considered the relevant factors and articulated a rational connection between the facts found and the choices made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Judicial review is limited to the administrative record. 42 U.S.C. § 7607(d)(7)(A).

## ARGUMENT

## I.  Petitioners' challenge should not be considered.

### A.    The challenge is moot.

In their original opening brief, Petitioners challenged the 2020 standards as being too low. Original Biofuels Br. 13-26. Petitioners

concede that their challenge to the 2020 standards is moot, now that EPA recalculated the 2020 standards in the 2020-2022 Rule. Br. 37. Petitioners thus change course, taking aim at EPA's "policy" from the 2020 Rule to not account for "retroactive" exemptions from prior years. *Id.* But that challenge is moot too, so the Court lacks Article III jurisdiction.

In the 2020-2022 Rule, EPA reopened and considered anew the relevant part of the 2020 Rule. In its proposal for the 2020-2022 Rule, EPA solicited comment on the 2020 Rule's revision of the percentage-standards formula. 86 Fed. Reg. at 72463. Growth Energy commented that EPA must account for "retroactive" exemptions from prior years. EPA-HQ-OAR-2021-0324-0521 at 85-88, JA108-11. In the 2020-2022 Rule, EPA responded to Growth Energy and others who had commented on how the 2020 Rule accounted for exemptions. Those responses went beyond the explanations in the 2020 Rule record. *Compare* 2020-2022 Response to Comments at 137-41, JA113-17, *with* 2020 Response to Comments at 172, JA080; *see also* 87 Fed. Reg. at 39632 ("[O]ur rationale for maintaining the 2020 final rule's approach largely overlaps with the rationales we previously presented, but also differs in some

respects."). After considering the issue anew, EPA reaffirmed the 2020 Rule's approach. 87 Fed. Reg. at 39631. Because EPA took a fresh look at the issue, the 2020-2022 Rule is a "*new* agency action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020).

There is no longer any "effectual relief" that the Court could grant relating to the 2020 Rule, so this case is moot. *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023). It is unclear what remedy Petitioners hope to obtain by continuing to challenge the 2020 Rule. The only available remedy under the Clean Air Act is that the Court "may reverse" the 2020 Rule upon finding error. 42 U.S.C. § 7607(d)(9). But EPA's more recent consideration of the issue in the 2020-2022 Rule is not before the Court, and that new action will remain in place no matter what remedy the Court orders relating to the 2020 Rule. Even if the Court were to conclude that EPA's rationale in the 2020 Rule record was arbitrary and capricious, that would not necessarily bear on EPA's expanded rationale for reaffirming the

approach in the 2020-2022 Rule. Perhaps because of this problem, Petitioners' brief is vague about the nature of the relief they seek.[4]

Petitioners cite three cases to dispute mootness, but those cases are inapposite. Br. 39. In *Union of Concerned Scientists v. NRC*, this Court held that the promulgation of a final rule did not moot a challenge to an interim final rule where the final rule relied on a "predicate" factual finding in the interim rule, and the final rule treated that predicate finding as "past history" without reevaluating it. 711 F.2d 370, 377-79 (D.C. Cir. 1983). Unlike that situation, the 2020-2022 Rule did not rely on an unexamined predicate finding in the 2020 Rule; instead, it considered the relevant issue anew. Further, the relationship between an interim final rule and a final rule is closer than the relationship between the 2020 Rule and the 2020-2022 Rule. After all, an interim final rule itself invites public comment and envisions the later promulgation of a related final rule.

---

[4] EPA is not disputing that there was an available judicial remedy five years ago, when Petitioners filed this case. So this issue is better framed as mootness rather than lack of standing due to lack of redressability, although the concepts are related. *See Garden State Broad. Ltd. P'ship v. FCC*, 996 F.2d 386, 394 (D.C. Cir. 1993).

*American Maritime Ass'n v. United States* was also a challenge to an interim final rule. 766 F.2d 545, 553-54 & n.14 (D.C. Cir. 1985). In a footnote that relied on *Union of Concerned Scientists*, the Court concluded that the issuance of a final rule did not moot a challenge to the interim final rule where the challenge was "equally applicable to the final rule and the interim rule." *Id.* The agency actions underlying that case underscore the unique relationship between an interim final rule and a final rule. The agency issued the interim final rule with immediate effect without notice and comment, while "invit[ing] comments" on the entire rule. 49 Fed. Reg. 2897, 2897, 2899-900 (Jan. 24, 1984). The final rule responded to comments and partially modified the rule, 49 Fed. Reg. 39847, 39850 (Oct. 11, 1984), but not in any way that was relevant to the pending challenge, *Am. Mar.*, 766 F.2d at 555 n.17. The 2020-2022 Rule, by contrast, was an entirely separate rulemaking from the 2020 Rule that gave full renewed consideration to the issue at hand.

*Motor & Equipment Manufacturers Ass'n v. Nichols* has even less to do with this case. It held that a "challenge to a portion of a regulation that is unaffected by intervening amendments does not become moot by

reason of those amendments." 142 F.3d 449, 459 (D.C. Cir. 1998). The

challenged part of the 2020 Rule is not "unaffected" by the 2020-2022

Rule because the 2020-2022 Rule reconsidered the relevant issue anew.

Petitioners' challenge to the 2020 Rule is moot. The challenged

part of the 2020 Rule no longer has effect because EPA took a fresh look

in the 2020-2022 Rule. That later rule will remain in place no matter

what relief the Court might grant relating to the 2020 Rule.

### B.    The challenge is otherwise inappropriate for judicial resolution.

Even if the Court were to find that this case is not constitutionally

moot, this case is inappropriate for judicial resolution for multiple

independent reasons.

**1.**    Even if the Court were to conclude that Petitioners'

challenge is not moot in the Article III sense, the Court should find this

case to be prudentially moot. *MBIA Ins. Corp. v. FDIC*, 708 F.3d 234,

245 (D.C. Cir. 2013). A case is prudentially moot when it "is so

attenuated that considerations of prudence and comity for coordinate

branches of government counsel the court to stay its hand, and to

withhold relief it has the power to grant." *Chamber of Com. v. DOE*, 627

F.2d 289, 291 (D.C. Cir. 1980). Prudential mootness is grounded in the

Court's equitable discretion. *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991); 42 U.S.C. § 7607(d)(9) (Court "may reverse" EPA action).

The Court should stay its hand because Petitioners seek review on a stale record. This Court's review is limited to the record for the 2020 Rule. 42 U.S.C. § 7607(d)(7)(A). EPA provided more explanation when promulgating the 2020-2022 Rule, but that explanation is not part of this record. The Court must review agency action under the "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), but the record here gives the Court no chance to evaluate the agency's fullest and most recent explanation of its rationale. The posture of this case presents essentially a reverse-*Chenery* problem, where Petitioners can attack only the old grounds invoked by the agency.

The staleness of Petitioners' challenge is highlighted by their brief, which relies extensively on post-record developments that EPA never had a chance to address in the record under review. For example, Petitioners' argument emphasizes the effects of two 2024 decisions by this Court that postdate the record for review by years. *See* Br. 28, 30.

The Court should also decline to decide this case because of the passage of time and its impact on the operation of the statute. Petitioners' argument relies on the word "ensure[]" in 42 U.S.C. § 7545(*o*)(3)(B)(i). Br. 28. But that statutory term is part of a time-limited provision. That provision required that through 2021, EPA establish a "renewable fuel obligation that ensures" that the target volumes for the following compliance year are met. 42 U.S.C. § 7545(*o*)(3)(B)(i). Although EPA has since chosen to continue implementing the volume requirements through percentage standards, 88 Fed. Reg. at 44519, section 7545(*o*)(3)(B)(i) does not impose any obligations on EPA for compliance years after 2022.[5] The administrative record for the 2020 Rule does not address the effect of this statutory provision beyond that time. Petitioners thus ask the Court to advise on how a statutory provision about standards through the 2022 compliance year affects an EPA "policy" going forward—all

---

[5] The statute uses the word "ensure" in a few other provisions, *see* 42 U.S.C. § 7545(*o*)(2)(A)(i), (*o*)(2)(A)(iii)(I), (*o*)(6)(B), but Petitioners make no argument based on those provisions and have waived any reliance on them.

based on an agency explanation from 2020. The Court should not needlessly wade into such matters.

2.      Petitioners waived—or alternatively, forfeited—their challenge by choosing not to raise it in the 2020-2022 Rule litigation. "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) (cleaned up). Both are "equitable doctrines." *Arellano v. McDonough*, 598 U.S. 1, 14 n.3 (2023).

Petitioners commented on the proposed 2020-2022 Rule to say that EPA should account for "retroactive" exemptions from past years, but they chose not to seek judicial review on that ground. *Supra* pp.8-9, 13-14. Instead, they intervened in defense of the rule, arguing against obligated-party petitioners on a closely related issue: whether the 2020-2022 Rule properly accounted for projected exemptions. *Sinclair* Intervenor Br. 14-15. Given their participation in the 2020-2022 Rule's public comment process and litigation, Petitioners no doubt knew that the rule addressed their argument about "retroactive" exemptions from past years.

20

Petitioners knowingly chose not to bring their claim in the case that presented the better and more timely opportunity to do so, and thus waived (or at least forfeited) the claim. They now belatedly raise their arguments in a case where the agency cannot defend its most recent record explanation of its position—a strategy that the Court should also find is barred by laches. *See Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843 (D.C. Cir. 1982) (equitable principle of laches "promote[s] diligence and prevent[s] enforcement of stale claims" to avoid prejudice). After all, Petitioners were far from diligent. If Petitioners believed that their claim was more properly raised here than in the 2020-2022 Rule litigation, then it makes no sense why Petitioners agreed in September 2022 that this case should remain in abeyance pending judicial review of the 2020-2022 Rule. Mot. 7 (Sept. 29, 2022), ECF#1966767.

If Petitioners wanted their challenge to be heard, they should have taken the same approach as the obligated parties. Obligated parties initially filed a brief in this case arguing that the 2020 Rule impermissibly revised the percentage-standard formula to account for projected exemptions. Obligated Party Br. 13-33 (Jan. 29, 2021),

21

ECF#1882897. When EPA reconsidered and reaffirmed that approach in the 2020-2022 Rule, obligated parties raised their arguments in a challenge to the 2020-2022 Rule. *Sinclair*, 101 F.4th at 890-93. Obligated parties correctly recognized that the 2020-2022 Rule, not the 2020 Rule, was the proper target and have since dismissed their challenges to the 2020 Rule. Petitioners do not explain why they chose not to take that sensible course, but by making that choice, Petitioners have waived or forfeited their challenge.

**3.**      Petitioners also waived—or alternatively, forfeited—their claim for another independent reason. In early 2021, when they filed their initial opening brief in this case, they challenged the 2020 standards. Original Biofuels Br. 13-26. They have now abandoned that claim, correctly recognizing that claim to be moot. Instead, they purport to challenge an EPA "policy" even though there was not a word in their original brief about challenging such a policy. *See id.*

Last fall, Petitioners sought to submit "supplemental briefing to address only arguments raised in Section I of their previously filed opening brief." Joint Mot. to Govern 3 (Oct. 16, 2024), ECF#2080031. They never mentioned pivoting to a new challenge after all these years.

22

The Court ordered new rather than supplemental briefs. Order (Oct. 25, 2024), ECF#2082015. But given the parties' representations, the Court's order was plainly to streamline judicial resolution by making it clear which arguments from the original briefs remain in play—not an invitation to raise a wholly new argument.

There is no good reason for Petitioners to raise these new arguments now, on a stale administrative record and after deliberately passing up the case that more properly presented their issue. Their challenge is inappropriate for judicial resolution for reasons of prudential mootness, waiver, forfeiture, and laches.[6]

## II.    The statute does not require EPA to set standards that account for exemptions from prior years.

If the Court were to reach the merits, then the Court should reject Petitioners' arguments. Petitioners argue that EPA's "policy" in the 2020 Rule violates EPA's statutory obligation to ensure the achievement of renewable-fuel volumes because EPA's standards do not

---

[6] To the extent that Petitioners think that recent new facts justify EPA revising its approach, they may put forward those new facts in an administrative petition for rulemaking to EPA. *See Alon Refin. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 642-46 (D.C. Cir. 2019).

make up for past "retroactive" exemptions. But the statute imposes no requirement that EPA adjust standards in that way.

Petitioners read a mandatory obligation into the statute where there is none. Congress required EPA to establish a renewable fuel obligation in the form of percentage standards before each compliance year, while allowing small refineries to petition for exemptions "at any time." 42 U.S.C. § 7545(*o*)(3)(B), (9)(B)(i). Yet nothing in the statute dictates how EPA must address the interplay between those provisions. Congress delegated authority to EPA to "determine" the renewable fuel obligation and dictated certain "[r]equired elements," but none of those requirements have to do with accounting for exemptions. *Id.* § 7545(*o*)(3)(B)(i)-(ii).

If Congress had wanted to impose the mandatory obligation that Petitioners assert, then Congress "knew how to do so." *Polselli v. IRS*, 598 U.S. 432, 439 (2023). Congress required RFS standards to account for exemptions in one specific way: EPA must adjust standards "to account for the use of renewable fuel during the previous calendar year by small refineries that are exempt." 42 U.S.C. § 7545(*o*)(3)(C)(ii). In other words, EPA had to account for exempt small refineries that used

24

renewable fuel in the prior year despite having no obligation to do so, which could result in overcompliance with the RFS program. *Sinclair*, 101 F.4th at 891. Congress thus knew that exemptions could affect the volume of renewable fuel used, and Congress considered when to require EPA to look backward to the previous year to address such effects. It chose to require EPA to account for prior overcompliance, but it imposed no such backward-looking obligation on EPA when it came to undercompliance due to past "retroactive" exemptions.

Instead, by delegating standard-setting authority to EPA and imposing certain requirements but not others, Congress left room for EPA to exercise reasoned discretion over the other details of how to calculate the standards. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (Congress may "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme" (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825))).

Unable to identify any specific statutory obligation that matches their policy preferences, Petitioners hang their hats on the word "ensure[]." 42 U.S.C. § 7545(*o*)(3)(B)(i); *see* Br. 28. But "ensure[]" does not impose the kind of obligation that Petitioners claim. That provision

did not obligate EPA to achieve target volumes with complete precision. That is because the annual standard-setting process is forward-looking and necessarily requires predictive judgment. Through 2021, Congress required EPA to establish percentage standards for the following compliance year. 42 U.S.C. § 7545(*o*)(3)(B)(i). By its nature, that process cannot ensure with absolute certainty that the standards will result in the target volumes being met. For instance, if the national consumption of gasoline and diesel turns out to be lower than expected, then obligated parties' compliance with the standards would not lead to the use of the full target volumes. On the other hand, higher-than-projected gasoline and diesel consumption would result in the use of more renewable fuel than the target volumes. *Sinclair*, 101 F.4th at 892.

Thus, in designing this statutory scheme, "Congress allowed for some imprecision to exist in the actual volumes of renewable fuel that are consumed as a result of the percentage standards that [EPA] set[s] each November." 85 Fed. Reg. at 7051 (quoting 77 Fed. Reg. 1320, 1340 (Jan. 9, 2012)); *see also Sinclair*, 101 F.4th at 892 (agreeing with obligated parties' statement that "imprecision is inherent in the

26

statute"). Petitioners themselves have acknowledged the predictive nature of the standard-setting process. *Sinclair* Intervenor Br. 14-15.

Petitioners try to expand the statutory directive based on a dictionary definition of the word "ensure[]." Br. 31. But statutory language must be read according to "the statutory context, taken as a whole," rather than "in isolation." *Dubin v. United States*, 599 U.S. 110, 118 (2023). In context, the best reading of "ensure[]" is that it admits of some imprecision. EPA must set percentage standards that, based on projections about the year to come, are reasonably designed—subject to arbitrary-or-capricious review—to meet the target volumes for that upcoming year. It does not, however, require EPA to set higher standards to make up for past target volumes that past standards did not achieve. Lower-than-projected gasoline and diesel use in one year does not require EPA to compensate with a higher standard in a future year. Similarly, the statute does not require EPA to set a higher standard in a future year because in a prior year, there ended up being more small refinery exemptions than EPA had accounted for. Conversely, the statute does not require EPA to set lower standards to

make up for any renewable-fuel use in past years beyond what prior standards had targeted.

Petitioners misconstrue case law to argue otherwise. Br. 31. To be sure, this Court has characterized the term "ensure[]" as a statutory directive. *E.g.*, *Sinclair*, 101 F.4th at 895 ("statutory mandate to 'ensure'"); *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 698 (D.C. Cir. 2017) ("statutory mandate"); *Monroe Energy, LLC v. EPA*, 750 F.3d 909, 920 (D.C. Cir. 2014) ("directive"). But the nature of that statutory directive is that EPA must establish forward-looking standards that provide a reasonable expectation, at the time EPA establishes the standards, that the target volumes for that compliance year will be met. None of those cases held that EPA must establish standards that both look forward and also look backward to make up for volumes that prior forward-looking standards did not end up achieving.

Petitioners point out that the "ensure[]" requirement refers to "the requirements of paragraph (2)," and that 42 U.S.C. § 7545(*o*)(2) addresses target renewable-fuel volumes for each year. Br. 31-32. They conclude that EPA must have a continuing obligation to ensure, year after year, that the target volumes were met for every past year of the

program. Br. 31-32. But the better reading of the statute is that each year's standards must be reasonably designed, as of the time when EPA establishes the standards, to achieve the target volumes for that year as determined through paragraph (2). That reading is more consistent with the year-by-year design of the statute, which directed EPA to establish annual standards to achieve the target volumes for each year.

In fact, setting standards that achieve one year's target volumes plus unachieved volumes from prior years could conflict with other parts of the statute. In years where actual renewable-fuel production is at or near the statutory targets, standards that attempt to make up for prior-year exemptions could exceed that year's statutory target. That could not have been Congress's intent; after all, Congress gave EPA the authority to waive statutory volumes but not the authority to increase those volumes. *See, e.g.*, 42 U.S.C. § 7545(*o*)(7)(A), (D)(i), (E)(ii). And if EPA had to establish standards that achieve cellulosic biofuel volumes that were not attained in past years—as Petitioners seem to assert— then EPA would have to set standards at a level that could require cellulosic volumes above the amount that EPA projects will be available that year. *See id.* § 7545(*o*)(7)(D)(i).

29

Petitioners suggest that their interpretation furthers the "fundamental congressional purpose of the RFS program: increasing renewable-fuel use." Br. 2, 32. But in fact, "[t]he RFS program reflects a carefully crafted legislative bargain to promote renewable fuels, but also to provide an exemption mechanism for small refineries." *Sinclair Wyo. Refin. Co. LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024). Petitioners' characterization of a single-minded legislative objective of increasing renewable-fuel use is misguided.

Petitioners also point to EPA's revision of the percentage-standard formula to account for projected exemptions, which this Court recently upheld. *Sinclair*, 101 F.4th at 890-93. Petitioners argue that the same logic requires EPA to adjust standards for past "retroactive" exemptions. Br. 29-30. To start, the Court did not hold that the statute compelled EPA to account for projected exemptions; it held that the statute authorized EPA to do so and that EPA's decision was not arbitrary or capricious. *Sinclair*, 101 F.4th at 891. In any case, it was not arbitrary or capricious for EPA to account for projected exemptions without also accounting for "retroactive" exemptions from past years. There is a significant difference between setting standards that

prospectively account for projected exempt volumes of gasoline and diesel for that compliance year, thus furthering the achievement of that year's volumes, and setting standards that retrospectively compensate for exemptions for past compliance years, which would make a second attempt to achieve prior years' volumes. EPA reasonably did the former, which is consistent with the statute's overall approach, without also doing the latter, which is not.

Nor does the logic behind other past EPA actions dictate the result here. At times, EPA has been late in establishing standards after missing the statutory deadline to do so. The Court has held that in such circumstances, EPA does not lose its authority to set standards that ensure that those years' volumes are met. *Monroe Energy*, 750 F.3d at 919-20; *Ams. for Clean Energy*, 864 F.3d at 720. EPA has also established supplemental volumes in 2022 and 2023 to make up for 2016 volumes that it waived according to what this Court later held was an unlawful waiver. *Ams. for Clean Energy*, 864 F.3d at 707; 87 Fed. Reg. at 39627-31; 88 Fed. Reg. at 44508-11. The Court upheld the 2022 supplemental volume as a reasonable exercise of EPA's authority to ensure that volumes are met. *Sinclair*, 101 F.4th at 893-96.

Those situations are quite different. EPA established late standards when EPA had never established standards at all for that compliance year, and EPA established supplemental standards to account for a legal error that resulted in vacatur and remand by this Court. Those actions are different from increasing standards to account for exemptions that EPA did not project in prior years. And when "situations are materially different," it is "reasonable for EPA to treat them differently." *Sinclair*, 101 F.4th at 895. There is a meaningful difference between accounting for a "legal mistake" and accounting for a "prognostication error." *Id.*

Petitioners argue that it was nonetheless arbitrary and capricious for EPA not to make up for past "retroactive" exemptions, which Petitioners say created "shortfalls [EPA] *knows* exist." Br. 33-34. But EPA knows of those exemptions only in retrospect; it did not know of them at the time it set the standards for those past years. By Petitioners' logic, lower-than-expected gasoline and diesel usage in a prior year would also result in a renewable-fuel "shortfall" that EPA would know of after the end of that year, and EPA would have to make an after-the-fact adjustment. Petitioners' theory would mean that, by

not increasing future standards to make up for that subsequently known deficit, EPA would knowingly fail to ensure that volumes for all years of the program have been met. Such reasoning is flatly contrary to the forward-looking nature of the statute.

Finally, Petitioners incorrectly argue that EPA's approach impermissibly rewrites the statute to convert past exemptions into an additional atextual waiver authority. But the waiver authorities in 42 U.S.C. § 7545(*o*)(7) allow EPA in certain circumstances to directly reduce the nationwide volumes. The small refinery exemption provision does not. 2020 Response to Comments at 169, JA077. Instead, it allows EPA to grant exemptions from RFS compliance obligations to specific qualifying small refineries. To the extent that exemptions granted after the calculation of percentage standards keep the target volumes from being met, that is because EPA must set the percentage standards before the compliance year. If the standards do not end up precisely achieving the target volumes due to such inherent uncertainties, that is not a "waiver."

Petitioners do not grapple with the full consequences of their argument, and the 2020 Rule's record does not (and necessarily cannot)

explain the consequences if the Court were to accept Petitioners'
position today. Petitioners claim that the standards in 2026 and in
future years may have to be increased to achieve an extra 4.73 billion
gallons (and possibly more) of renewable fuel. Br. 25.

Doing so would do nothing to increase the use of renewable fuel in
past years, while potentially causing great disruption in future years.
Obligated parties may not be able to achieve the standards if there is
inadequate renewable-fuel production. Historically, renewable-fuel
production has not grown as Congress envisioned. *Sinclair*, 101 F.4th at
876 (explaining how the RFS statute "dramatically overestimated the
speed at which domestic production of renewable fuel could expand,
leading EPA year after year to reduce the statutorily required
renewable fuel requirements"); 87 Fed. Reg. at 39602 (exercising
authority under 42 U.S.C. § 7545(*o*)(7)(F) to "reset" volumes after past
waivers). If the standards require more renewable-fuel use than the
market can achieve, then the effect of increasing standards would be
either noncompliance or a reduction in the number of available
carryover RINs (unretired RINs carried over from the previous
compliance year). *Sinclair*, 101 F.4th at 895. But the flexibility and

34

liquidity created by carryover RINs is crucial to the proper functioning of the RIN market, as this Court has recognized. *Id.* at 886, *Ams. for Clean Energy*, 864 F.3d at 714-15. Imposing additional volumes in future years to account for any renewable-fuel shortfalls from past years could cause significant disruption of the RFS program.

Petitioners blithely suggest that EPA can spread out volumes over multiple future years if necessary. Br. 34 n.3. But when EPA imposed supplemental volumes in response to the Court's remand of the 2016 standards, it split the 500 million gallons over two years. EPA found that 250 million gallons each year was an amount that was "feasible and can be achieved through the actual use of renewable fuels," 87 Fed. Reg. at 39628, but requiring an extra 500 million gallons in a single year could be disruptive, *see* 86 Fed. Reg. at 72459. In comparison, Petitioners want future standards to be increased by 4.73 billion gallons "and potentially much more." Br. 25. If the Court were to accept Petitioners' arguments, then that could have disruptive consequences for years to come. *See* 2020-2022 Response to Comments at 140, JA116 ("We have significant doubt about the market's ability to consume an additional 2.61 billion gallons.").

Besides, if EPA had to do a retrospective accounting of whether its past standards achieved target volumes, then that could cut in both directions: EPA could have to consider the potential for not only under-achievement, but also over-achievement, of past target volumes. As EPA explained when promulgating the 2023-2025 Rule, EPA recently found that its prior standards "required more renewable fuel than [EPA's] rulemakings intended" because EPA's calculations were based on under-predictions of gasoline and diesel usage. 2023-2025 Regulatory Impact Analysis, EPA-HQ-OAR-2021-0427-1113, at 58, JA131. If the Court were to accept Petitioners' logic, it could turn out that EPA finds excess renewable-fuel use in past years rather than a shortfall.

## CONCLUSION

The petitions should be dismissed.

36

Respectfully submitted,

/s/ *Tsuki Hoshijima*
ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

Of Counsel:

LUCAS MAY
U.S. Environmental Protection
 Agency

TSUKI HOSHIJIMA
KIMERE J. KIMBALL
U.S. Department of Justice
Environment and Natural Resources
 Division
P.O. Box 7611
Washington, D.C. 20044
(202) 532-3285
tsuki.hoshijima@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of the Court's order of October 25, 2024 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 6,909 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Tsuki Hoshijima*